## Farmers National Bank of Grayville, Illinois, Appellee, v. E. B. Crooks, Appellant.

Opinion filed June 6, 1938. Rehearing denied July 7, 1938.

CONGER & ELLIOTT, of Carmi, for appellant.

P. J. KOLB, of Mt. Carmel, for appellee.

MR. PRESIDING JUSTICE STONE delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Edwards county in the sum of $7,402.88. The judgment was obtained by confession. It was opened up by the court on motion, and defendant given leave to file an answer. Trial of the issues was had and substantially the following facts are deducible from the record and are uncontradicted.

For many years plaintiff had been a national bank located at Grayville, Illinois, and from the year 1916 until January, 1935, E. P. Bowman was its president. In 1935, he was succeeded by his brother Frank. In December, 1928, the Penglase Sand & Gravel Company was indebted to the Bank for $6,000 the limit of indebtedness which the Bank could legally loan. This gravel company owned a boat which had been purchased for $9,000 and upon which a contractor, one Dunlap of Edwardsville, had a lien in the form of a conditional sales contract for a balance of $5,877. This indebtedness was past due and Dunlap was about to take the boat under said contract. The gravel company had no money and no further credit. The company at that time was indebted to plaintiff in the sum of $6,000, and plaintiff bid fair to lose that loan. Accordingly, for the purpose of protecting plaintiff's loan, E. P. Bowman, who was then president and the actual manager of the plaintiff institution, sent his personal check to Dunlap at Edwardsville for $5,875 and took an assignment of the aforesaid contract. When this check was returned to the Bank it was not charged to Bowman's account, but was retained over night as a cash item. The next day Bowman procured a note

from one F. E. Rigall for the amount of this check. The record does not disclose who Rigall was or what relations he and Bowman sustained. The note was substituted for the check as one of the assets of the Bank and the check removed. The assigned contract was returned to Bowman and placed in the vaults of the Bank away from the personal papers of Bowman. It was afterwards carried as collateral by plaintiff. No credit was given to Rigall because of his note and the same was carried for about a year and a half, the Sand & Gravel Company paying the interest thereon. In May, 1929, a bank examiner came to examine the Bank. He complained of the Rigall note, that it was too large and insufficiently secured and demanded that it be taken up and another placed in its stead. The examiner was aware of the facts concerning it.

Acting upon the examiner's request Mr. Bowman, the president, in May, 1929, asked the defendant, who was a farmer, not connected with Bank or the gravel company in any way, but merely a friend, to sign a note for $5,877.50 for the Bank. It seems that defendant asked no questions; that Bowman had his entire confidence, and defendant did not hesitate to sign the note. Defendant received nothing for this note, not even the canceled note of Rigall, and no consideration of any kind or character moved to him. He understood that he was not to get anything and did not expect anything. He thought he was doing an accommodation by signing this note for the Bank. He received no credit for it. It was handled as an accommodation to the Bank all the way through. This note was placed among the assets of the Bank and was renewed from time to time. Defendant never paid any interest on it and apparently never paid any attention to it. The note was in the hands of his friend Bowman and he asked no questions.

Later the Sand & Gravel Company went into bankruptcy and an attempt was made by Mr. Bowman, act-

ing for the Bank, to foreclose his lien. This it seems was unsuccessful, even though carried to the circuit court of appeals. It was apparently the Bank's doings; they paid the costs and attorney fees for this litigation.

The notes sued on in this case were charged off as assets of the Bank on July 20, 1935. This was done at the behest of the bank examiner. He decided they were accommodation notes for the accommodation of the Bank and could not be collected. He apparently was in possession of all the facts as given to him before any litigation was contemplated or begun.

This case must be decided by putting proper conclusions upon the facts as above stated insofar as it is humanly possible. There can be no question but what the notes on which judgment was taken were accommodation paper, and as such between the payee and defendant they are uncollectible unless it is possible to deduce from these facts that this accommodation was given for the benefit of the gravel company and not for the Bank.

We are unable to arrive at that conclusion. Aside from the facts as they are stated, every circumstance in this case seems to indicate that these notes were made for the accommodation of the Bank, that there was no consideration for them moving to defendant, that he received no credit for them; that it was understood they were not to be paid by him. He was merely helping the Bank, or accommodating the Bank by use of his paper. So far as this record discloses defendant knew nothing about any transactions between the Bank and the gravel company. No rights of third parties intervene at any point. The plaintiff here is payee in these notes; they have not been transferred. Plaintiff is charged with knowledge of all the circumstances and does not deny such knowledge; in fact, it is one and the same person as the one who originally took the notes and who renewed them from time to time.

In view of all these circumstances we are impelled to the belief that this case falls within the case of *Ruvenacht v. German-American Bank*, 212 Ill. App. 68, and *Straus v. Citizen's State Bank*, 164 Ill. App. 420, and other cases along the same line.

Not only is this true in our judgment, but it would be manifestly unjust to compel defendant to pay these notes. The sole beneficiary of these transactions was the plaintiff itself; not until the collateral which it had taken over failed to materialize in money did plaintiff turn upon the individual who has accommodated it and helped it to keep its credit. The law will not lend itself for the carrying out of such transactions.

It was error for the court to restore these judgments. The judgment of the circuit court is reversed.

*Cause reversed.*